# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

IN RE: DAVOL, INC./C.R. BARD, INC., POLYPROPYLENE HERNIA MESH PRODUCTS LIABILITY LITIGATION

Case No. 2:18-md-2846

JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson

This document relates to:
*Johns v. CR Bard et al,*
Case No. 2:18-cv-01509

## EVIDENTIARY MOTIONS ORDER NO. 1

### Bard's Motion to Strike Plaintiff's Expert Dr. David Grischkan's Supplemental Report and Reliance List

This matter is before the Court on Defendants Davol Inc. and C.R. Bard, Inc.'s (collectively "Bard") Motion to Strike Plaintiff's Expert Dr. David Grischkan's Supplemental Report and Reliance List (*Johns* ECF No. 48.) The motion has been fully briefed on an expedited basis (ECF No. 55, 65) and is now ripe for decision. For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Bard's Motion.

## I.

Plaintiff Steven Johns' trial is the first bellwether trial of the thousands of cases in this multidistrict litigation ("MDL") and is scheduled to commence on May 11, 2020. The Judicial Panel on Multidistrict Litigation described the cases in this MDL as follows:

> All of the actions share common factual questions arising out of allegations that defects in defendants' polypropylene hernia mesh products can lead to complications when implanted in patients, including adhesions, damage to organs, inflammatory and allergic responses, foreign body rejection, migration of the mesh, and infections.

(Transfer Order, MDL ECF No. 1.) Ventralight ST is a prescription medical device used for

hernia repair and is one of Bard's products at issue in this MDL. It is a multicomponent device made of a mesh of polypropylene, polyglycolic acid (PGA) fibers, and a bioresorbable coating called Sepra Technology ("ST"). (Bard's Mot. for Summary Judgment, ECF No. 29 at 3.) The bioresorbable coated side of the mesh is placed against organs, such as the bowels, while the uncoated polypropylene side is placed to maximize tissue attachment to support the hernia repair. (*Id.* at 4.)

Plaintiff contends that Bard knew the component parts of the mesh were dangerous and unsafe for use in medical devices. (Pl's Opp. to Mot. for Summary Judgment, ECF No. 69 at 1.) According to Plaintiff, Bard knew that polypropylene is not suitable for permanent implantation in the human body, that the ST coating resorbs too quickly, and that the PGA fibers created an increased inflammatory response. (*Id.*)

Plaintiff brings this action to recover for injuries sustained as a result of the implantation of Bard's defective Ventralight ST. (*Id.*) Plaintiff was diagnosed with a symptomatic ventral hernia within a diastasis recti at the age of 58 in July 2015. (*Id.* at 9.) Plaintiff underwent surgery to repair the hernia and diastasis in August 2015, and Plaintiff's doctor implanted Plaintiff with Ventralight ST Mesh. (*Id.*) Plaintiff's symptoms returned several months later, and he underwent a second surgery in October 2016. (*Id.*) During that surgery, Plaintiff's doctor observed omental adhesions to the original Ventalight ST and performed "lengthy arthroscopic [sic] lysis of the dense omental adhesions from the prior mesh implant." (*Id.*) Plaintiff's doctor then removed the original device and implanted another Ventralight ST. (*Id.*) Plaintiff was diagnosed with another hernia within the diastasis recti in April 2019 and underwent a third surgery that month to repair the hernia, but the second Ventralight ST device was not removed. (*Id.*)

Plaintiff contends the omental adhesions discovered in his second surgery were a result of

the failure of the ST barrier on the Ventralight ST Mesh, and that the continued presence of the second Ventralight ST mesh currently inside his body continues to threaten his health and well-being and cause pain. (*Id.* at 10-11.) He claims it is probable he will need additional surgery for either chronic pain or possible complications, such a bowel obstruction or fistulization. (*Id.*)

Plaintiff offers the testimony of Dr. David Grischkan as an expert on specific causation. (*See* Pl's Opp. to Mot. to Exclude, ECF No. 64.) Pursuant to Case Management Order 20-A (MDL ECF No. 274), expert reports for the six bellwether trial pool cases were due on December 4, 2019. Plaintiff served an expert report for Dr. David Grischkan on December 5, 2019, and on January 24, 2020, Dr. Grischkan was deposed. On February 3, 2020, Bard moved to exclude Dr. Grischkan's testimony under, *inter alia*, Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). (*See* ECF No. 31.) Three days later, on February 6, 2020, Plaintiff served a supplemental expert report and reliance list for Dr. Grischkan. Bard now seeks to strike the February 6 supplemental report and reliance list under Federal Rule of Civil Procedure 37(c)(1).

Bard takes issue with a paragraph added to Dr. Grischkan's original report detailing a November 22, 2019 phone call with Plaintiff, during which Plaintiff complained of some left-side abdominal pain that Dr. Grischkan attributes to Plaintiff's currently in place Ventralight ST mesh. Bard contends that Dr. Grischkan's initial expert report "was silent as to any opinions related to the state of Plaintiff's currently in place Ventralight ST or any contact between Dr. Grischkan and Plaintiff." (Mot. to Strike, ECF No. 48 at 4.) Dr. Grischkan, however, testified at his deposition that the Ventralight ST mesh currently implanted in Plaintiff is causing Plaintiff "some left abdominal pain," and that the basis for this opinion was a phone call with Plaintiff. (*Id.*) According to Bard, "neither the opinion related to Plaintiff's current abdominal pain nor the

3

call with plaintiff were disclosed in Dr. Grischkan's report or in any supplement to his report before his deposition." (*Id.* at 5.)

Dr. Grischkan's February 6, 2020 supplemental report includes the following new language:

> **Phone Call with Steven Johns**
> On November 22, 2019, I spoke with Mr. Johns directly and obtained information related to his current health. At this time, Mr. Johns informed me that he is currently experiencing some left-side abdominal pain near the location of the second Ventralight ST mesh implant. This information merely confirms my opinion that the Ventralight ST mesh is flawed and increased the risk and severity of complications to Mr. Johns. As mentioned above, it is highly likely that either there are already dense adhesions to the second Ventralight ST mesh, which has led to Mr. Johns' current abdominal pain, or the pain is caused by residual adhesions related the to the first Ventralight ST mesh. Based on my knowledge and experience explanting meshes with bioresorbable coatings, including the Ventralight ST, as well as my review of the medical literature, Bard's documents, and the medical records and depositions in this case, it is my opinion to a reasonable degree of medical certainty that the second Ventralight ST mesh is flawed and will cause Mr. Johns to suffer from additional injuries related to the mesh, such as chronic pain or the demand for subsequent surgeries.

(ECF No. 48-1 at 10.) Attached to the supplemental report was a supplemental reliance list containing 91 company documents, none of which were cited to in the original report, and 27 articles, some of which were cited to in the original report. Bard argues that "[i]t is clear from the supplemental report that Dr. Grischkan spoke with Plaintiff before Plaintiff's expert disclosure deadline" and that the "law is unequivocal that this type of 'supplementation' is improper and prohibited." (ECF No. 48 at 6.) Bard therefore moves, pursuant to Federal Rule of Civil Procedure 37(c)(1), to strike the February 6, 2020 supplemental report and reliance list of Plaintiff's expert Dr. David Grischkan.

Plaintiff opposes Bard's motion, arguing that Dr. Grichkan's supplemental report and reliance list was timely, did not contain any new opinions not previously disclosed, and that Bard had ample opportunity to cross-examine Dr. Grischkan on the supplemental report at his second

4

deposition and will be able to cross-examine him again at trial. Plaintiff is also agreeable to having Defendants submitting supplemental *Daubert* briefing as well as supplemental expert reports based on Dr. Grischkan's supplemental report, though he opposes a second deposition or IME of Plaintiff.

## II.

Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of expert testimony, requiring parties to disclose the identity of any witness it may use a trial to present evidence under Federal Rule of Evidence 702, 703, or 705. *See* Fed. R. Civ. P. 26(a)(2)(A). That disclosure must be accompanied by a written report that contains, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B). The parties must make their expert disclosures "at the times and in the sequence that the court orders" and supplement "when required under Rule 26(e)." Fed. R. Civ. P. 26(a)(2)(D)-(E).

Rule 26(e) requires parties to supplement or correct its disclosures:

> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing;

Fed. R. Civ. P. 26(e)(1)(A). With respect to expert witnesses, a party's duty to supplement "extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due," Fed. R. Civ. P. 26(e)(2), which is 30 days before trial unless otherwise ordered. Fed. R. Civ. P. 26(a)(3)(B).

If a party fails to provide information as required by Rule 26(a) or (e), they may not use that information at trial "unless the failure was substantially justified or is harmless." Fed. R.

5

Civ. P. 37(c)(1). The court may also impose other sanctions. *Id.*

### III.

The Sixth Circuit has held that district courts have broad discretion over whether to exclude untimely disclosed expert testimony. *See Pride v. BIC Corp.*, 218 F.3d 566, 578-79 (6th Cir. 2000); *see also Estes v. King's Daughters Medical Center*, 59 Fed. Appx. 749, 752 (6th Cir. 2003) ("Rule 16 grants district courts broad discretion to enforce their scheduling orders."). This Court has interpreted the supplementation permitted by Rule 26 as "limited to 'correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure.'" *Winter Enterprises, LLC v. W. Bend Mut. Ins. Co.*, No. 1:17-CV-360, 2019 WL 3413907, at *8 (S.D. Ohio July 29, 2019) (quoting *Antioch Co. Litig. Tr. v. McDermott Will & Emery, LLP,* No. 3:09-CV-218, 2016 WL 8257680, at *2 (S.D. Ohio July 15, 2016)).

Plaintiff does not contend that this information was unavailable before Dr. Grischkan's original expert report was due. There is no dispute that the November 22, 2019 phone call between Dr. Grischkan and Plaintiff, where Dr. Grischkan learned of Plaintiff's current abdominal pain, occurred prior to Plaintiff's December 4, 2019 expert disclosure deadline. Plaintiff also does not contend the supplemental report corrects an "inaccuracy" in Dr. Grischkan's original report.

Instead, Plaintiff explains that the omission of the phone call from the original report "was an inadvertent oversight on the part of Dr. Grischkan. He believed that because he did not consider this phone call to be something he relied on in formulating his opinion and because the information gathered during the call merely confirmed his opinion, he did not need to reference it in his report." (ECF No. 55 at 4.) "Supplementation of an expert report is allowed 'to correct

inadvertent errors or omissions.'" *Rush v. City of Mansfield*, 2009 WL 454347, at *5 (N.D. Ohio Feb. 24, 2009) (quoting *Gallagher v. S. Source Packaging, LLC*, 568 F. Supp. 2d 624, 630 (E.D.N.C. 2008)). But supplementation "'does not cover failures of omission because the expert did an inadequate or incomplete preparation.'" *Id.* (quoting *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002)). Nor is supplementation "a license to amend an expert report to avoid summary judgment." *Gallagher*, 568 F.Supp.2d at 630. "Courts distinguish 'true supplementation' (e.g., correcting inadvertent errors or omissions) from gamesmanship, and have therefore repeatedly rejected attempts to avert summary judgment by 'supplementing' an expert report with a 'new and improved' expert report." *Id.* at 631 (collecting cases).

Bard argues that Plaintiff served Dr. Grischkan's supplemental report after Bard had already moved to exclude Dr. Grischkan's opinions and moved for summary judgment based on Dr. Grischkan's original report. According to Bard, Dr. Grischkan's supplemental report contains new opinions and is an attempt to support Dr. Grischkan's opinions in contravention of this Court's scheduling orders and the purpose of *Daubert*. (ECF No. 48 at 9-10) (citing *Pride v. BIC Corp.*, 218 F.3d 566, 578-79 (6th Cir. 2000) ("'District courts have broad discretion to exclude untimely disclosed expert-witness testimony,' particularly when these reports serve as a 'transparent attempt to reopen' the *Daubert* inquiry after the weaknesses in the expert's prior testimony have been revealed.")).

Plaintiff argues that Dr. Grischkan's supplemental disclosures did not include any new opinions or information. Plaintiff, however, also argues that "any information that was unintentionally omitted from Dr. Grischkan's original report that was subsequently disclosed in his supplemental report was the result of harmless error and is therefore admissible." (ECF No. 55 at 6.)

Plaintiff is correct that even if Dr. Grischkan's supplemental disclosures were not proper under Rule 26, that information may still be used at trial if Plaintiff shows the omission was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). The Advisory Committee's note to Rule 37(c)(1) "strongly suggests that 'harmless' involves an honest mistake on the party of a party coupled with sufficient knowledge on the part of the other party." *Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (internal citations omitted). The Sixth Circuit has adopted the following five factors to consider in assessing whether an omitted or late disclosure is substantially justified or harmless:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Id.* (citing *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396-97 (4th Cir. 2014)). Bard contends that it is Plaintiff's burden to show the omission of this information in his original report was substantially justified or harmless, and that Plaintiff cannot meet his burden. (ECF No. 48 at 7). Bard argues Plaintiff's omissions were not justified—there were seven weeks to correct any issues with Dr. Grischkan's initial report before his January 24, 2020 deposition, and that it still took Plaintiff 10 days to obtain a supplemental report and another 3 days to serve it after discovering the omission during the deposition.

Nor, according to Bard, was Plaintiff's omission harmless error. Bard contends that until Dr. Grischkan's deposition, it had no knowledge that Dr. Grischkan was planning to testify that Plaintiff had current abdominal pain related to his second Ventralight ST, or that Dr. Grischkan had spoken to Plaintiff. Bard states that based on Plaintiff's May 2019 deposition, where Bard asserts Plaintiff only attributed his pain to recovery from his April 2019 surgery, and lack of medical records suggesting current pain, it did not seek an independent medical examination of

8

Plaintiff. Furthermore, Bard contends that Plaintiff's omission undermines the bellwether selection process and impacts the briefing schedule on Bard's already-filed *Daubert* and summary judgment motions that relied on Dr. Grischkan's original reports.[1]

In response, Plaintiff contends:

> Dr. Grischkan made an honest mistake when he did not reference the phone call he had with Plaintiff in his expert report. However, he fully disclosed his opinion regarding the second Ventralight ST mesh in the original report. That opinion was known by Defendants and is consistent with his opinion in the supplemental report. Thus, there is no lack of knowledge on the Defendants' part regarding any of Dr. Grischkan's opinions and his supplemental report should not be stricken.

(ECF No. 55 at 8.) Plaintiff points to the following sections of Dr. Grischkan's initial report as containing opinions on the second Ventralight ST:

> Based on the medical records I reviewed, it appears there has not been a further recurrence of the hernia, however, there also is no evidence of the condition of the second Ventralight ST mesh. As such, it is definitely possible, if not probable, that there could be dense adhesions attached to the second Ventralight ST mesh that was implanted in October 2016.
>
> \*\*\*
>
> Moreover, due to the uncertainty surrounding the condition of the current Ventralight ST mesh that was implanted intra-abdominally in 2016, it is entirely possible that similar adhesions formed to this mesh, which could lead to a bowel obstruction or fistulization in the future.

(Grischkan Report, ECF No. 31-1 at 9-10). Plaintiff contends Bard was on notice, since December 5, 2019, of Dr. Grischkan's opinions on Plaintiff's current Ventralight ST device, and that the supplemental report "is a mere extension of the original report, as it highlights his opinion that the second Ventralight ST is also flawed and will most likely continue to cause injuries to Plaintiff." (ECF No. 55 at 10). The supplemental report adds:

---

[1] To the extent Bard argues on Reply that Dr. Grischkan offered other undisclosed opinions at deposition or related to other cases, those issues are not presently before the Court in this Motion.

9

**Phone Call with Steven Johns**
On November 22, 2019, I spoke with Mr. Johns directly and obtained information related to his current health. At this time, Mr. Johns informed me that he is currently experiencing some left-side abdominal pain near the location of the second Ventralight ST mesh implant. This information merely confirms my opinion that the Ventralight ST mesh is flawed and increased the risk and severity of complications to Mr. Johns. As mentioned above, it is highly likely that either there are already dense adhesions to the second Ventralight ST mesh, which has led to Mr. Johns' current abdominal pain, or the pain is caused by residual adhesions related the to the first Ventralight ST mesh. Based on my knowledge and experience explanting meshes with bioresorbable coatings, including the Ventralight ST, as well as my review of the medical literature, Bard's documents, and the medical records and depositions in this case, it is my opinion to a reasonable degree of medical certainty that the second Ventralight ST mesh is flawed and will cause Mr. Johns to suffer from additional injuries related to the mesh, such as chronic pain or the demand for subsequent surgeries.

Plaintiff contends that this supplemental information is "substantially the same opinion Dr. Grisckkan started in his original report and during his first deposition." (ECF No. 55 at 10.) Plaintiff further argues that he testified at his May 2019 deposition that he was recovering from an April 2019 surgery and was experiencing pain. According to Plaintiff, even if he had testified he was expecting no pain at his deposition, "it is not unreasonable that he developed pain at a later date and was experiencing abdominal pain in November of 2019 that he did not experience in May of 2019, especially because Plaintiff still has a foreign body mesh implanted in him, which is known to cause a slew of complications, including pain, even years after the implant." (*Id.* at 9.) Plaintiff thus argues that any omission of the information contained in the supplemental report was the result of harmless error and is admissible.

Plaintiff's arguments are well-taken in light of the five factors set forth in *Howe*. This case is the first bellwether trial in a very large and complex MDL comprised of thousands of cases. Evidence regarding Plaintiff's current abdominal pain, and his specific causation expert's proffered opinion regarding that pain and its relation to Plaintiff's currently implanted

10

Ventralight ST, is highly relevant and important to the issues in this products liability. Plaintiff has explained that the failure to disclose the phone call was "inadvertent" and "an honest mistake," and that the supplemental report was prepared after Bard solicited this information from Dr. Grischkan at his January 24, 2020 deposition. (ECF No. 48-2.) With respect to surprise, Bard contends it was not aware of Plaintiff's current abdominal pain or Dr. Grischkan's opinions regarding that current pain and connection to the second Ventralight ST; however, the original report did contain opinions regarding the current device and possibility of future complications. (*See* ECF No. 31-1 at 9-10.) Moreover, Plaintiff testified in May 2019 that he was experiencing pain related to recovery from his April 2019 surgery, and as Plaintiff argued, it is not unbelievable that Plaintiff continued to experience pain, or has developed other pain, relevant to this case in the nine months since that deposition. Under CMO 20-A, Bard had until October 25, 2019 to seek an IME of Plaintiff and until December 2, 2019 to seek additional fact discovery from Plaintiff, but it did not. (*See* MDL ECF No. 274.) Even if Dr. Grischkan had disclosed the phone call in his December 5, 2019 report, that disclosure would have been after both the IME and general fact discovery deadlines for Bard to seek the information it claims it does not have.

Nevertheless, the Court will allow Bard to cure any surprise posed by Dr. Grischkan's supplemental expert report. Bard was already permitted to, and did, question Dr. Grischkan regarding his supplemental report at his second deposition on February 14, 2020. Additionally, Bard may, as soon as practicable, re-depose Plaintiff solely on his physical complaints since his May 2019 deposition. Bard may then submit a supplemental expert report from one of its experts addressing Dr. Grischkan's supplemental expert report and Plaintiff's deposition testimony, and supplement its briefing on its pending *Daubert* and summary judgment motions addressing Dr. Grischkan's supplemental report and Plaintiff's deposition testimony. Permitting Dr. Grisckan's

supplemental report while also allowing Bard to pursue the information it seeks will not disrupt trial, which is more than two months away. Both Plaintiff and Bard are represented by teams of competent counsel with significant MDL experience, and the Court is confident they will follow the Court's guidance without delay.

But the Court will not permit Bard to reconsider its bellwether trial selection. Bard strenuously advocated for a Ventralight ST case to be the first case tried in this MDL, and for its Ventralight ST pick—*this case*—to be picked over the PSC's Ventralight ST pick. (*See* MDL ECF No. 299 and 307.) On January 24, 2020 (the date of Dr. Grischkan's first deposition when Bard learned of Dr. Grischkan's opinion at issue), the Court adopted Bard's proposed sequencing of cases by device and selected this case for the first trial. (*See* MDL ECF No. 318). The Court gave the parties an opportunity to object to this selection until noon on January 27, 2020. Bard did not object, or raise any issues with Dr. Grischkan's deposition testimony impacting its bellwether trial selection at that time. This case will continue to proceed to trial as scheduled.

## IV.

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Bard's Motion to Strike (ECF No. 48.) Specifically, the Motion is **DENIED** with respect to Bard's request to strike Dr. Grischkan's supplemental expert report. The Motion is **GRANTED** with respect to Bard's request to:

- Re-depose Plaintiff Steven Johns solely on his physical complaints since his May 2019 deposition;

- Submit a supplemental expert report from one of its experts addressing Dr. Grischkan's supplemental expert report and Plaintiff's deposition testimony;

- Submit additional briefing related to its *Daubert* and summary judgment motions related to Dr. Grischkan's supplemental expert report and Plaintiff's deposition testimony.

**IT IS SO ORDERED.**

__3-9-2020__
**DATE**

/s/ Edmund A. Sargus, Jr.
**EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE**

__3/9/2020__
**DATE**

/s/ Kimberly A. Jolson
**KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE**