UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: DAVOL, INC./C.R. BARD, INC., POLYPROPYLENE HERNIA MESH PRODUCTS LIABILITY LITIGATION | Case No. 2:18-md-2846<br><br>JUDGE EDMUND A. SARGUS, JR.<br>Magistrate Judge Kimberly A. Jolson |

This document relates to:
Johns v. CR Bard, *et al.*
Case No. 2:18-cv-1509

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO COMPEL PRODUCTION (ECF No. 423) AND DENYING AS MOOT DEFENDANTS' MOTION TO STRIKE DR. NAGY (ECF No. 26)

Defendants C.R. Bard, Inc. and Davol, Inc. filed two motions related to the role of Dr. Tamas Nagy, DVM, Ph.D., DACVP, as an expert witness: a motion to strike Dr. Nagy as an expert witness and a motion to compel Plaintiff Steven Johns to produce Dr. Nagy's photomicrographs, score sheets, and notes associated with Dr. Nagy's review of Defendants' histopathology slides from an pre-clinical animal study. For the following reasons, Defendants' motion to strike is denied as moot and their motion to compel is granted.

### I.  Background[1]

This case is the first bellwether trial, selected from thousands of cases in this multidistrict litigation, alleging "that defects in defendants' polypropylene hernia mesh products can lead to complications when implanted in patients, including adhesions." (No. 2:18-md-02846, ECF No.

---

[1] The Court assumes that the parties and other interested readers are familiar with the history of this case. For a more complete factual background, the reader is directed to the Court's summary judgment opinion and order. *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*, Nos. 2:18-md-2486, 2:18-cv-01509, 2020 WL 5223363, at *1–6 (S. D. Ohio Sept. 1, 2020).

1

1 at PageID #1–2.) This includes the Ventralight ST, the device implanted in Plaintiff. The Ventralight ST is a prescription medical device used for hernia repairs. *In re Davol, Inc./C.R. Bard, Inc.*, 2020 WL 5223363, at *1. The Food and Drug Administration cleared it for use through the premarket notification § 510(k) process in 2010 and later cleared it for use with the Echo Positioning System in 2011. It is a multicomponent device made of a mesh, which consists of polypropylene, polyglycolic acid fibers, and a bioresorbable hydrogel barrier called "Sepra Technology" ("ST"). The ST-coated side of the mesh is placed against organs, such as the bowels, while the uncoated polypropylene side is placed against the fascia because the uncoated side maximizes tissue attachment and thus supports the hernia repair. *Id.* at *1–2.

Plaintiff brings this action to recover for injuries sustained as a result of the implantation of Defendants' allegedly defective Ventralight ST device. Plaintiff claims that Defendants knew that polypropylene is unsuitable for permanent implantation in the human body. *Id.* at *4. The crux of Plaintiff's claims is that the ST coating on the Ventralight ST resorbs too quickly. This leads to the exposure of bare polypropylene to internal organs and tissues, increasing the risk of potential complications. Plaintiff alleges that this occurrence led to omental adhesions after his laparoscopic hernia repair surgery in 2015. The following claims remain for trial: design defect, under negligence and strict liability theories; failure to warn, under negligence and strict liability theories; breach of express warranty; breach of implied warranty; breach of implied warranty of merchantability; negligent misrepresentation; and punitive damages. *Id.* at *6–25.

On December 4, 2019, Dr. Nagy was designated as a specially retained expert witness. (ECF No. 423-4 at PageID #22412.) Shortly thereafter, Dr. Nagy reviewed the histopathology slides from Defendants' pre-clinical animal studies. (ECF No. 292 (Case Management Order No. 24).) On December 30 and 31, 2019, Dr. Nagy reviewed the slides, took

photomicrographs of the slides, used a score sheet to facilitate his review of the slides, and took notes on his findings. (ECF No. 423-2 at PageID #22388, pp. 28–29.) On January 7, 2020, Plaintiff's counsel indicated via email that Dr. Nagy would not offer opinion testimony based on his review of the slides. (ECF No. 424-2 at PageID #22434.) It is undisputed that Dr. Nagy did not submit an expert report encompassing this initial review of the slides/photomicrographs. Accordingly, Defendants filed a motion to strike Dr. Nagy as an expert on this basis. (ECF No. 26.) Defendants contend that despite Plaintiff's representations that Dr. Nagy will not offer opinion testimony, Plaintiff has not withdrawn Dr. Nagy. (*Id.* at PageID #176.)

On June 8, 2020, the Court permitted Dr. Nagy to serve as an expert rebuttal witness to Defendants' expert Dr. Badylak. (ECF No. 157 at PageID #9515.) Specifically, Dr. Nagy could respond to Dr. Badylak's opinion that the ST coating was present on the slides. (*Id.*) Dr. Nagy re-reviewed the slides and submitted his rebuttal expert report on July 1, 2020. (ECF No. 423-1 at PageID #22352.) His deposition began on January 20, 2021 and was continued pending the resolution of this dispute. (ECF No. 423-2 at PageID #22381, 22401.) In sum, the parties dispute whether Dr. Nagy was properly redesignated as a consulting, non-testifying expert, but they do not dispute that after this Court's June 8, 2020 order, Dr. Nagy was designated as an expert witness permitted to rebut Dr. Badylak's ST-related findings on the slides/photomicrographs.

## II. Motion to Compel

Federal Rule of Civil Procedure 26(a)(2)(B)(ii) requires disclosure of "the facts or data considered by the witness in forming" his opinions if the witness must provide a written report, *i.e.* the witness may give expert testimony. Fed. R. Civ. P. 26(a)(2)(B)(ii). "The deposition-discovery rules," such as Rule 26, "are to be accorded a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). A party is entitled to access

3

to "all materials reviewed or considered by the expert, whether or not the expert report ultimately refers to those materials as a basis for his or her opinions." *United States v. Am. Elec. Power Serv. Corp.*, Nos. 2:99-cv-1182, 2:99-cv-1250, 2006 WL 3827509, at *1 (S.D. Ohio Dec. 28, 2006). In this circuit, courts have interpreted "considered" in Rule 26(a)(2)(B)(ii) expansively, concluding that "considered" includes "anything received, reviewed, read, or authored by the expert, before or in connection with the forming of his opinion, if the subject matter relates to the facts or opinions expressed." *Euclid Chem. Co. v. Vector Corrosion Techs., Inc.*, No. 1:05 CV 80, 2007 WL 1560277, at *4 (N.D. Ohio May 29, 2007) (footnotes omitted); *see also In re Com. Money Ctr., Inc., Equip. Lease Litig.*, 248 F.R.D. 532, 536 (N.D. Ohio 2008).[2] Ambiguities are resolved in favor of discovery. *W. Res., Inc. v. Union Pac. R.R. Co.*, No. 00-2045-CM, 2012 WL 181494, at *16 (D. Kan. Jan. 31, 2002) (citing *B.C.F. Oil Refin., Inc. v. Consol. Edison Co.*, 171 F.R.D. 57, 62 (S.D.N.Y. 1997)). "The burden of showing that an expert did not consider certain documents in forming his opinion rests with the party resisting the disclosure." *Coda Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, No. 5:15-CV-01572-SL, 2020 WL 8675391, at *3 (N.D. Ohio Oct. 30, 2020) (quoting *Thieriot v. Jaspan Schlesinger Hoffman LLP*, No. CV 07-5315 TCP AKT, 2011 WL 4543308, at *4 (E.D.N.Y. Sept. 29, 2011)).

The parties focus their briefing on whether Dr. Nagy was designated as a testifying expert witness when he took photomicrographs of the slides and created his score sheets

---

[2] Although the 2010 amendments to Rule 26(a)(2)(B), specifically the inclusion of "facts or data," were "meant to limit disclosure to material of a factual nature by excluding theories or mental impressions of counsel," "the word 'considered' is unchanged, thus cases interpreting its meaning remain valid." *Coda Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, No. 5:15-CV-01572-SL, 2020 WL 8675391, at *2 (N.D. Ohio Oct. 30, 2020) (citations omitted).

4

and notes, but it is unnecessary to address this question to resolve the motion to compel because Dr. Nagy considered the facts and data in these materials while forming his expert rebuttal opinion. It is undisputed that Dr. Nagy re-reviewed the photomicrographs of the slides and that the photomicrographs are discoverable facts and/or data. (ECF No. 423-2 at PageID #22390, p. 37.) Dr. Nagy's score sheets and notes contain facts and data that Dr. Nagy considered in forming his rebuttal opinion as well. Dr. Nagy testified that he duplicated Defendants' scoring system from their studies to confirm Defendants' "histological findings" during his review. (ECF No. 423-2 at PageID #22387, p. 24; 22392, p. 42.) He also agreed that his score sheets and notes "characterize[d] what [he] saw" on the slides. (ECF No. 423-2 at PageID #22387, p. 23.) It appears that the visual qualities of the slides, as captured in the photographs taken via microscope, are the pertinent facts and data here. Dr. Nagy's efforts, then, to capture his visual observations are also facts and data. Moreover, Dr. Nagy "considered" his score sheets and notes because he "authored" them "before" he formed his opinion, and the subject matter of his score sheets and notes, the visual qualities of the photomicrographs, relates to the subject matter of his rebuttal opinion, other visual qualities of the photomicrographs. *Euclid Chem.*, 2007 WL 1560277, at *4. This is consistent with the Advisory Committee's note to the 2010 amendments that "the expert's testing of material involved in litigation, and notes of any such testing, would not be exempted from discovery by this rule." Fed. R. Civ. P. 26, advisory committee notes to 2010 amendments; *see also Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1191 (11th Cir. 2013.)

Plaintiff argues that Dr. Nagy's score sheets and notes are not facts or data as required by Rule 26(a)(2)(B)(ii) and that his interpretation and commentary on the slides

5

that are entitled to work-product privilege. (ECF No. 424 at PageID #22425 & n.2.) Plaintiff relies on *Damgaard v. Avera Health*, No. 13-2192 (RHK/JSM), 2015 WL 4993701, at *5 (D. Minn. June 18, 2015), for the position that an expert's comments warrant work-product protection, but this case is inapplicable. *Damgaard* addressed comments made by the plaintiff's lawyer's paralegal, leading the court to conclude that the comments "constitute[d] the opinion work product of Damgaard's lawyers." 2015 WL 4993701, at *5. *Damgaard* does not stand for the proposition that an expert's thought processes are categorically undiscoverable. In any case, Dr. Nagy characterized his notes as visual observations, not as those capturing his mental processes. The visual examination is the testing process that Dr. Nagy used to complete his review and the Court fails to see how else the presence of absence of certain characteristics of the slides could be captured. Accordingly, the notes and sheets contain facts and data.

Plaintiff also asserts that Dr. Nagy did not consider his score sheets and notes while forming his rebuttal opinion because the specific objective of Dr. Nagy's initial review of the photomicrographs, the degree of the inflammatory response in the tissue, is unrelated to the subject matter of the second review, the absence or presence of the ST coating. (ECF No. 424 at PageID #22425.) This contradicts Dr. Nagy's own rebuttal report in which he addresses inflammatory responses in relation to the presence of the ST coating. For instance, Dr. Nagy challenges Dr. Badylak's conclusion that "the area beneath the PGA layer contains hydrogel" because edema fluid was present. (ECF No. 423-1 at PageID #22337.) Dr. Nagy claims that this conclusion is suspect because Dr. Badylak did not consider whether the presence of the fluid was due to an inflammatory response. (*Id.*) Thus, the presence of inflammation would be a factor in Dr. Nagy's rebuttal opinions

6

addressing the presence of the ST coating. This meaningfully undermines Plaintiff's assertion that Dr. Nagy's score sheets and notes are "completely irrelevant to his expert opinion" "because they were on a completely different topic." (ECF No. 424 at PageID #22425.) At best, it is ambiguous whether Dr. Nagy considered his score sheets and notes, requiring disclosure of the documents.

Importantly, Defendants need not simply accept Plaintiff's assertion that Dr. Nagy did not consider the score sheets and notes. *B.C.F. Oil*, 171 F.R.D. at 62. Even when an expert states that he did not consider certain materials in forming his opinions, federal courts have concluded that such an assertion "does not control." *Id.*; *Coda*, 2020 WL 8675391, at *3; *Am.'s Collectibles Network, Inc. v. Sterling Com. (Am.), Inc.*, No. 3:09-cv-143-TRM-HBG, 2017 WL 2602980, at *3 (E.D. Tenn. Apr. 18, 2017). And Plaintiff, the party resisting discovery of Dr. Nagy's score sheets and notes, carries the burden to affirmatively show that Dr. Nagy did not consider these materials. In this instance, there is not an assertion from Dr. Nagy that he did not consider his score sheets and notes in forming his rebuttal opinions. He states that he did not need to re-score his score sheets on his second review of the photomicrographs. (ECF No. 423-2 at PageID #22391, p. 39.) His statement does not say that his score sheets or related notes in forming his opinion. Plaintiff provides no evidence to the contrary.

Plaintiff raises three other counterarguments, but none prevail. First, Plaintiff argues that Dr. Nagy only considered his score sheets and notes when he initially reviewed the slides as a consulting witness, and so those materials are undiscoverable under Federal Rule of Civil Procedure 26(b)(4)(B). (ECF No. 424 at PageID #22422.) Rule 26(b)(4)(D) specifies that parties may not seek discovery of "facts known or

7

opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." Accordingly, a non-testifying consulting witness is generally immune from discovery. *In re Welding Fume Prods. Liab. Litig.*, 534 F Supp. 2d 761, 767 (N.D. Ohio 2008). This is true even when a testifying expert is redesignated as a non-testifying consulting expert. *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 272–73 (2010). Plaintiff's reliance on this Rule is unavailing.

Even crediting Plaintiff's contention that Dr. Nagy was a consulting witness initially, Plaintiff does not demonstrate that the privilege outlined by Rule 26(b)(4)(D) applies to Dr. Nagy. *See In re Com. Money Ctr.*, 248 F.R.D. at 539 ("It is well-settled that the party asserting a privilege bears the burden of establishing it."). The proponent of a dual-hat expert, *i.e.* an expert that is both a consulting and testifying expert, may still claim that materials are privileged under Rule 26(b)(4)(D), "but only over those materials generated or considered *uniquely* in the expert's role as consultant." *Id.* at 538 (quoting *SEC v. Reyes*, No. C 06-04435 CRB, 2007 WL 963422, at *2 (N.D. Cal. March 30, 2007)); *see also Yeda Rsch. & Dev. Co. v. Abbott GMBH & Co. KG*, 292 F.R.D. 97, 108 (D.D.C. 2013). "In dual-hat expert cases, the term 'considered' in Rule 26(a)(2)(B) should be construed expansively in favor of the party seeking discovery" and ambiguity as to whether the expert "considered" the materials should be resolved in favor of discovery. *Yeda*, 292 F.R.D. at 108–09(quoting *Monsanto Co. v. Aventis Cropscience*, 214 F.R.D. 545, 547 (E.D. Mo. 2002)). As discussed above, the subject matter of Dr. Nagy's score sheets and notes are related to the subject matter of his rebuttal report. It makes sense to conclude that Dr. Nagy considered his score sheets and notes in forming

his rebuttal opinion. He "cannot be expected to draw a mental line in the sand between information gleaned" in an earlier, consulting context and information later learned as a testifying expert when the subject matter is so similar. *Id.* at 115 ("It would be impracticable to ask such a Herculean task of dual-hat experts, or even of experts generally; that is why courts eschew a subjective standard for whether a testifying expert has 'considered 'facts or data,' and why courts construe the dual-expert rule in favor of the party seeking discovery." (citations omitted).) In both instances, Dr. Nagy was tasked with a visual examination of the slides. Therefore, Dr. Nagy's score sheets and notes were not "unique" to his initial review of the photomicrographs.

Second, Plaintiff contends that Dr. Nagy's mental impressions are protected even if he is a testifying expert, relying on Federal Rule of Civil Procedure 26(b)(3) and 26(b)(4)(C). The Court disagrees. Rule 26(b)(3)'s work-product protection applies to attorney work product and generally does not extend to experts because "expert discovery is a special category specifically regulated by Rule 23(b)(4)." Steven S. Gensler & Lumen N. Mulligan, 1 Federal Rules of Civil Procedure, Rules and Commentary, Rule 26, Westlaw (database updated Feb. 2021) ("[N]othing in the 2010 amendments altered the existing understanding that work-product protection under Rule 26(b)(3) does not extend to expert materials generally."). And Rule 26(b)(4)(C) protects communications between an expert and a party's attorney, but "the 'protection does not extend to an expert's *own* development of the opinions to be presented." *Deere & Co. v. FIMCO, Inc.*, No. 5:15-CV-105-TBR-LLK, 2016 WL 11269254, at *3 (W.D. Ky. Dec. 5, 2016) (quoting *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 293 F.R.D. 568, 577 (S.D.N.Y 2013)). As other courts have concluded, "the driving purpose of the 2010 amendments

[to Rule 26] was to protect opinion work product—i.e., *attorney* mental impressions conclusions, opinions, or legal theories—from discovery." *Republic of Ecuador v. Mackway*, 742 F.3d 86, 870 (9th Cir. 2014) (emphasis added). Characterizing Dr. Nagy's materials as his mental impressions does transform the materials into work product protected from discovery. Plaintiff does not argue that his counsel's opinions are reflected in Dr. Nagy's score sheets or notes. Dr. Nagy's score sheets and notes contain "factual ingredients," and thus they are discoverable. *Wenk v. O'Reilly*, No. 2:12-cv-474, 2014 WL 1121920 at *4 (S.D. Ohio Mar. 20, 2014).

Third, Plaintiff argues that Dr. Nagy's score sheets and notes are not discoverable because they are expert report drafts protected by Rule 26(b)(4)(B). (ECF No. 424 at PageID #22426.) An expert's draft reports are not discoverable, but an expert's notes are. *Wenk*, 2014 WL 1121920, at *5. Courts have considered "smaller writings" as drafts if they were "made with the purpose of incorporating them into the eventual draft." *Gensler*, *supra*, Rule 26. Indeed, the purpose of the rule against discovery for an expert's draft reports is "not to shield the expert's reasoning process from discovery, but to guard against the disclosure of attorney work product and to facilitate the communication process between attorney and expert." *Wenk*, 2014 WL 1121920 at *6. There is no indication that Dr. Nagy made his score sheets and notes with the intention that they would be incorporated into later drafts or that Dr. Nagy and Plaintiff's counsel discussed Dr. Nagy's score sheets and notes in a manner that would disclose any attorney work product were Plaintiff to produce the materials. Plaintiff asserts that Dr. Nagy testified that his score sheets and notes were drafts, but Plaintiff provides no deposition citation and the Court cannot find a statement from Dr. Nagy that his score sheets and notes were

draft reports.

For these reasons, Plaintiff must produce Dr. Nagy's photomicrographs of the slides, as well as Dr. Nagy's score sheets and notes. The Court expressly reserves judgment regarding the admissibility of the photomicrographs, score sheets, and notes.[3]

### III. Motion to Strike

Defendants also move to strike Dr. Nagy as an expert. (ECF No. 26.) Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of expert testimony. The parties must make their expert disclosures "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). If a party fails to provide information as required by Rule 26(a) they cannot use that information at trial "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Defendants argue that because Plaintiff did not serve an expert report for Dr. Nagy by January 15, 2020, he must be stricken as an expert. (ECF No. 26 at PageID #174.) However, in the time since Defendants filed their motion to strike, Plaintiff served Dr. Nagy's rebuttal report, and Plaintiff does not dispute that Dr. Nagy is now a testifying rebuttal expert. ECF No. 424 at PageID #22420.) Accordingly, Defendants' motion is denied as moot.

### IV. Conclusion

For the reasons set forth above, Defendants' motion to compel (ECF No. 423) is **GRANTED** and Defendants' motion to strike Dr. Nagy (ECF No. 26) is **DENIED AS MOOT**. Plaintiff shall produce the photomicrographs, score sheets, and notes within **ten days of the entry of this order**.

---

[3] In Defendants' reply in support of their motion to strike Dr. Nagy as an expert, they argue that the photomicrographs Dr. Nagy took of the slides are inadmissible. (ECF No. 82 at PageID #5784.)

**IT IS SO ORDERED.**

**6/4//2021**          **s/Edmund A. Sargus, Jr.**
**DATE**               **EDMUND A. SARGUS, JR.**
                       **UNITED STATES DISTRICT JUDGE**


                       **s/Kimberly A. Jolson**
                       **KIMBERLY A. JOLSON**
                       **UNITED STATES MAGISTRATE JUDGE**