UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: DAVOL, INC./C.R. BARD, INC., POLYPROPYLENE HERNIA MESH PRODUCTS LIABILITY LITIGATION | Case No. 2:18-md-2846<br><br>JUDGE EDMUND A. SARGUS, JR.<br>Magistrate Judge Kimberly A. Jolson |

**This document relates to:**
*Johns v. CR Bard et al*,
Case No. 2:18-cv-01509

## DISPOSITIVE MOTIONS ORDER No. 4

Before the Court is Plaintiff Steven Johns's motion for a new trial under Federal Rule of Civil Procedure 59. (ECF No. 573.) Plaintiff argues that he is entitled to a new trial because Defendants, C.R. Bard, Inc. and Davol Inc., repeatedly violated this Court's motion in limine ("MIL") orders and Defendants' introduction of irrelevant, prejudicial, and undisclosed opinion testimony from fact witnesses prejudiced the jury and prevented Plaintiff from receiving a fair trial. Plaintiff alleges that Defendants, through their counsel and witnesses: (1) repeatedly stated that adhesions can form in situations other than hernia surgeries in violation of MIL Order Nos. 1-A and 9; (2) made numerous statements purporting to represent the views of the medical community and doctors generally in violation of MIL Order No. 1-A; (3) repeatedly made statements and presented testimony violating the spirit of the Court's holding in MIL Order No. 6 that neither party may introduce evidence of the number of cases pending against Defendants; and (4) introduced irrelevant, prejudicial, and undisclosed opinion testimony about two fact witnesses recommending Defendants' mesh products to personal contacts in violation of MIL Order No. 3. For the reasons stated below, Plaintiff's motion (ECF No. 573) is **DENIED**.

1

## I. Background[1]

This case was the first bellwether trial, selected from thousands of cases in this multidistrict litigation, alleging "that defects in defendants' polypropylene hernia mesh products can lead to complications when implanted in patients, including adhesions." *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*, Nos. 2:18-md-2486, 2:18-cv-01509, 2020 WL 5223363, at *1 (S. D. Ohio Sept. 1, 2020). This includes the Ventralight ST, the device implanted in Plaintiff. The Ventralight ST is a prescription medical device used for hernia repairs. The Food and Drug Administration ("FDA") cleared it for use through the premarket notification § 510(k) process in 2010 and later cleared it for use with the Echo Positioning System in 2011. It is a multicomponent device made of a mesh that consists of polypropylene, polyglycolic acid fibers, and a bioresorbable coating called "Sepra Technology" ("ST"). The ST-coated side of the mesh is placed against organs, such as the bowels, while the uncoated polypropylene side is placed against the fascia because the uncoated side maximizes tissue attachment and thus supports the hernia repair. *Id.* at *1–2.

Plaintiff brought this action to recover for injuries sustained as a result of the implantation of Defendants' allegedly defective Ventralight ST device. *Id.* at *4. Plaintiff claimed that Defendants knew that polypropylene is unsuitable for permanent implantation in the human body. *Id.* at *2–4. The crux of Plaintiff's claims was that the ST coating on the Ventralight ST resorbs too quickly. *Id.* at *13. This leads to the exposure of bare polypropylene to internal organs and tissues, increasing the risk of potential complications. Plaintiff alleged that this occurrence led to omental adhesions after his laparoscopic hernia repair surgery in 2015. *Id.* The following claims

---

[1] For a more complete factual background, the reader is directed to the Court's summary judgment opinion and order. *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*, Nos. 2:18-md-2486, 2:18-cv-01509, 2020 WL 5223363, at *1–6 (S. D. Ohio Sept. 1, 2020).

were argued at trial: design defect, under negligence and strict liability theories; failure to warn, under negligence and strict liability theories; breach of express warranty; breach of implied warranty; breach of implied warranty of merchantability; negligent misrepresentation; and punitive damages. *Id.* at *6–25. Trial commenced on August 2, 2021 and lasted for approximately five and a half weeks. On September 8, 2021, the jury returned a verdict for Defendants. (ECF No. 552.)

## II. Legal Standard

A federal court, hearing a case on the basis of diversity jurisdiction, reviews a motion for a new trial based on a federal standard. *Conte v. Gen. Houseware Corp.*, 215 F.3d 628, 637 (6th Cir. 2000). Under Rule 59 of the Federal Rules of Civil Procedure, a new trial may be granted in a jury trial for "any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). According to the Sixth Circuit, "[a] new trial may be warranted under Rule 59 'when a jury has reached a seriously erroneous result as evidenced by . . . the verdict being against the weight of the evidence . . . or [] the trial being unfair to the moving party in some fashion, *i.e.,* the proceedings being influenced by prejudice or bias.'" *CFE Racing Prod., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 584 (6th Cir. 2015) (quoting *Balsley v. LFP, Inc.,* 691 F.3d 747, 761 (6th Cir. 2012)). Granting a new trial is within the sound discretion of the trial court and an abuse of discretion occurs only upon "'a definite and firm conviction that the trial court committed a clear error of judgment.'" *Id.* (quoting *Mike's Train House, Inc. v. Lionel, L.L.C.,* 472 F.3d 398, 405 (6th Cir.2006).

The admission or denial of evidence at trial is within a trial court's discretion. *Stockman v. Oakcrest Dental Ctr., P.C.*, 480 F.3d 791, 797 (6th Cir. 2007). A trial court abuses its discretion only if it is determined that there exists a firm conviction that it "made a mistake in admitting

3

challenged evidence." *Id.* (citing *United States v. Wiedyk*, 71 F.3d 602, 608 (6th Cir. 1996)). However, an appellate court will only "reverse a jury's verdict if the error was prejudicial." *Id.* (citing *Polk v. Yellow Freight Sys., Inc.*, 876 F.2d 527, 532 (6th Cir. 1989)). In this context, "prejudice" means "a substantial risk that the jury made a determination of liability on an improper basis—*i.e.*, if the rest of the evidence did not clearly support a finding of liability." *Id.* at 799. If there "has been an evidentiary error, [the appeals court] will vacate a jury verdict where the error so altered the total mix of information submitted to the jury that it was substantially likely to have affected the verdict." *Id.* at 804.

### III. Analysis

Plaintiff argues that he is entitled to a new trial because (1) Defendants repeatedly violated MIL Order No. 1-A by introducing evidence of adhesions occurring outside of hernia surgeries; (2) Defendants also violated MIL Order No. 1-A by making statements and eliciting testimony purporting to represent the views of all doctors; (3) Defendants improperly presented testimony and argument on the purported lack of complaints regarding the Ventralight ST; and (4) Defendants violated MIL Order No. 3 by introducing unexpected testimony about Defendants' fact witnesses recommendations of mesh products to family and friends.

### A. Evidence of Adhesions Occurring Outside of Hernia Surgeries

Plaintiff argues that Defendants violated the Court's MIL Order 1-A by referencing adhesions in non-hernia surgeries. (ECF No. 573 at PageID #31183–87.) Plaintiff points to remarks in Defendants' opening statement, such as "adhesions are a surgical fact of life for surgery that occurs with or without mesh" and "[i]t's no secret that adhesions were a potential complication of all surgery and surgery with mesh." (ECF No. 558 at PageID #28426, 28464.) Plaintiff also alleges violations of MIL Order No. 1-A in testimony given by Defendants' experts Dr. Amit

4

Badhwar and Dr. David Renton, and in Defendants' cross-examination of Plaintiff's witness Dr. Julia Babensee.

Defendants respond that they did not violate MIL Order 1-A. (ECF No. 584 at PageID #33119.) Defendants cite to the Court's statements during the MIL hearing held on August 27, 2020, that it was "not in any way limiting [Defendants'] adducing testimony about adhesions in surgeries." (ECF No. 311 at PageID #16848.) During the hearing, the Court stated:

> I am not in any way limiting your adducing testimony about adhesions in surgeries, but I don't want to be talking about other types of surgery. This case is complicated enough for a jury. You can certainly explain when muscles are operated upon and sutured together, that adhesions are common or whatever you think the testimony will bear from your experts, but I don't want us to delve into any other types of surgery that will need explanation and that won't shed a whole lot of light; particularly, when you really don't need that in terms of explaining a hernia surgery.

(ECF No. 311 at PageID #16848.) Defendants claim that "the motivating factor that led [] the Court to draw the distinction between hernia surgeries and surgeries generally was not the purported prejudice from statements regarding adhesions as a routine complication, but rather its concerns about possible duplication and redundancy[.]" (ECF No. 584 at PageID #33118.) Defendants argue that "Plaintiff misstates the record to manufacture a violation of MIL Order No. 1-A that did not occur." (*Id.* at PageID #33119.)

MIL Order No. 1-A states that "[Defendants] may present evidence of adhesions occurring in hernia surgeries, but not in other non-hernia surgeries." (ECF No. 330 at PageID #17882.) However, as Defendants point out, "when objections were interposed or witnesses began straying off track, [Defendants] rephrased [their] questions and asked the witness to focus on hernia surgeries specifically." (ECF No. 584 at PageID #33119.) For example, when Dr. Badhwar testified that "adhesions are a normal, unfortunate side effect of abdominal surgery" (ECF No. 564 at PageID #29239), he was redirected to "focus[] on hernia surgeries" (*id.* at PageID #29242). Defendants' expert Dr. Renton testified that "[a]dhesions happen with any operation. They happen

5

with knee and hip replacements. They happen with lung surgery. They happen in the abdomen as well any time you have surgery. . . . This patient never had surgery, but they still have adhesions." (ECF No. 571 at PageID #30686–87.) Plaintiff again objected, and Defendants asked the witness to "keep the focus on hernia surgery, not other surgeries." (*Id.* at PageID #30688.) Plaintiff also points to Dr. Renton's testimony regarding "adhesions just from having a hernia." (*Id.* at PageID #30762.) Plaintiff objected to this testimony, but the Court overruled the objection. (*Id.* at PageID #30764.) Additionally, during cross-examination of Plaintiff's expert Dr. Babensee, Defendants asked about "the frequency of adhesions in abdominal surgery in general or hernia surgery without mesh[.]" (ECF No. 568 at PageID #30061.) Plaintiff objected to the question, and Defendants narrowed the question to "the incidence of adhesions in hernia surgery in the intraabdominal space without mesh." (*Id.* at PageID #30062.) As Defendants noted, when Plaintiff objected to the various discussions of adhesions in non-hernia surgeries, Defendants accordingly narrowed the scope of their questioning. Therefore, Plaintiff was not prejudiced by the testimony or cross-examination, and a new trial is not warranted on this ground.

Plaintiff also points to defense counsel's remarks during opening statements that "[adhesions] are a surgical fact of life for surgery that occurs with or without mesh," and "[i]t's no secret that adhesions were a potential complication of all surgery and surgery with mesh." (ECF No. 558 at PageID #28426, 28464.) Although defense counsel's remarks during opening statements were improper under MIL Order No. 1-A, "[a party] must meet a high standard to obtain a new trial on the grounds of improper statements by opposing counsel." *CFE Racing Prod., Inc.* 793 F.3d at 589 (citing *Balsley*, 691 F.3d at 761–62). "In considering whether allegedly improper attorney statements merit a new trial, [courts] analyze the totality of the circumstances[.]" *Id.* at 590. However, "[e]ven if the statements are improper, [the party is] not entitled to a new trial

6

unless 'there is a reasonable probability that the verdict of the jury has been influenced by such conduct.'" *Id.* (quoting *Balsley*, 691 F.3d at 761). Additionally, when a party fails to object to such statements, "[t]heir failure to object 'raises the degree of prejudice which must be demonstrated' in order for this Court to grant the request for a new trial. [The Sixth Circuit has] found statements that were 'egregious' or 'outrageous' to have met this standard." *Id.* (citing *Strickland v. Owens Corning*, 142 F.3d 353, 358 (6th Cir. 1998)). The remarks about adhesions during Defendants' opening statements were brief, and Plaintiff did not object to the remarks. Additionally, "the jury was instructed that the arguments of counsel are not evidence. Thus, any minimal amount of prejudice created by the improper argument was cured." *Michigan First Credit Union v. Cumis Ins. Soc., Inc.*, 641 F.3d 240, 249 (6th Cir. 2011); *see* ECF No. 579 at PageID #32579. The Court finds that defense counsel's remarks regarding adhesions were not 'egregious' or 'outrageous' enough to have influenced the jury's verdict, and do not warrant a new trial.

### B. Statements Purporting to Represent the Views of All Doctors

Plaintiff filed a MIL to prohibit under Federal Rules of Evidence 401, 403, and 602 statements and testimony that "all doctors" know the risks of injuries suffered by Plaintiff (ECF No. 240), which the Court granted (MIL Order No. 1-A, ECF No. 330 at PageID #17882). At the August 27, 2020 MIL hearing in *Johns*, the Court stated:

> Certainly part of this case is medical practice and procedure. I would not let a witness get on the stand and talk about what all doctors know. There are other ways to do that that would be admissible evidence, and that would be what training did you receive, what are the procedures in the hospital where you practice, are you familiar with other hospital practices, et cetera. You know how to do it. But we're not bringing a doctor on to give a survey of other doctors. That's my only concern. This really has to do with the framing more than it does with the substance.

(ECF No. 311 at PageID #16855.)

Plaintiff claims that Defendants "violated this prohibition through numerous statements

7

from their attorneys and witnesses purporting to represent the views of the medical community and doctors generally." (ECF No. 573 at PageID #31187.) Plaintiff points to defense counsel's statements that "[i]f this really was an issue or a problem, the medical community would know about it" (ECF No. 558 at PageID #28428), and "most doctors don't consider adhesions a complication" (*Id.* at PageID #28455). Plaintiff also points to the testimony of Defendants' expert witness, Dr. Renton, that "the understanding is that when we place these products in the abdomen, that we get neoperitonealization in five to seven days. And in doing so, we'll have a natural barrier that will minimize any attachments [of] the intra-abdominal contents to the mesh." (ECF No. 571 at PageID #30707.) Plaintiff claims that Dr. Renton's use of the words "the understanding" and "we" show that he was purporting to speak for surgeons generally. (ECF No. 573 at PageID #31188.) Plaintiff also notes Dr. Renton's testimony that "[s]urgeons would be talking to each other" about issues with the Ventralight ST. (*Id.* at PageID #30812.)

In response, Defendants claim that what the medical community knew and understood was a material part of this case, and point to the Court's statement at the August 27, 2020 MIL hearing that "part of this case [wa]s medical practice and procedure." (ECF No. 311 at PageID #16855.) However, the Court continued that it "would not let a witness get on the stand and talk about what all doctors know." (*Id.*) The Court acknowledged that "[t]here are other ways to do that that would be admissible evidence, and that would be what training did you receive, what are the procedures in the hospital where you practice, are you familiar with other hospital practices, et cetera. . . . But we're not bringing a doctor on to give a survey of other doctors." (*Id.*) Defendants claim that the Court's statement at the MIL hearing that its concerns "really ha[d] to do with the framing [of the questions] more than it does with the substance" shows that the ruling only relates to the manner in which defense counsel questioned their experts. (ECF No. 584 at PageID #33121.)

8

At trial, Defendants asked Dr. Renton about the impact on himself or surgeons generally of reperitonealization occurring in five to six days. (ECF No. 571 at PageID #30706.) Following Plaintiff's objection and the Court's direction to rephrase the question, Defendants asked Dr. Renton about "[his] understanding and th[at] of [his] colleagues [.]" (*Id.*) The court overruled Plaintiff's renewed objection to the question. (*Id.*) This question fit within the narrow focus of the Court's ruling that admissible testimony includes "what training [a doctor] receive[d], what [] the procedures [are] in the hospital where [the doctor] practices, [and whether the doctor is] familiar with other hospital practices." (ECF No. 311 at PageID #16855.) Under Federal Rule of Evidence 602, a witness may only testify about something if they have personal knowledge of the matter. Fed. R. Ev. 602. Testimony regarding Dr. Renton's personal knowledge of his colleagues' understanding does not violate this Court's ruling.

Plaintiff argues that Dr. Renton's use of the words "we" and "our" in his testimony purport to speak for all surgeons or the medical community at large. The Court agrees that such broad testimony was improper. However, the Court does not find that this testimony was "substantially likely to have affected the verdict." *Stockman*, 480 F.3d at 804. "At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61. The error did not "so alter[] the total mix of information submitted to the jury that it was substantially likely to have affected the verdict," *Stockman*, 480 F.3d at 804, and therefore a new trial is not warranted on this ground.

Plaintiff also argues that Defendants violated the Court's ruling by defense counsel's statements that "[i]f this really was an issue or a problem, the medical community would know about it" (ECF No. 558 at PageID #28428), and "most doctors don't consider adhesions a complication" (*Id.* at PageID #28455). The Court's analysis regarding defense counsel's

9

statements in Part III.A, *supra*, also applies here.  Defense counsel's statements were not so outrageous as to warrant a new trial.

### C. Testimony About the Purported Lack of Complaints Regarding the Ventralight ST

Defendants filed a MIL to limit evidence and argument regarding other litigation.  (ECF No. 214).  The motion was granted in part and denied in part.  (MIL Order No. 3, ECF No. 332 at PageID #17888; MIL Order No. 11, ECF No. 415 at PageID #22200–01.)  In granting Defendants' motion in part, the Court concluded that "[t]he parties may not introduce evidence of the number of cases pending in this MDL[.]"  (MIL Order No. 3, ECF No. 332 at PageID #17888.)  Plaintiff also filed a MIL to exclude evidence and testimony regarding Plaintiff's counsel, which the Court granted and reiterated that "no party may introduce evidence of the number of cases pending against Defendants."  (MIL Order No. 6, ECF No. 366 at PageID #18930.)

Plaintiff alleges that Defendants violated the "spirit" of the Court's ruling that neither party could introduce evidence of the number of cases pending against Defendants.  (ECF No. 573 at PageID #31189–91.)  Plaintiff claims that, because he could not introduce evidence of the pending cases, he could not rebut testimony and argument from Defendants that there was a "lack of complaints" about the Ventralight ST.  Specifically, Plaintiff points to a portion of defense counsel's opening statement that said "[if] the hydrogel resorbs too quickly on the Ventralight ST and all the ST product line then the medical community would know about it.  It would be published in medical journals that surgeons read every day.  It would be discussed and debated at surgeon conferences.  But that has not occurred.  In fact, just the opposite."  (ECF No. 558 at PageID #28427.)  Plaintiff also claims that Defendants' expert, Dr. Renton, presented the "lack of complaints" argument.  On cross-examination, Plaintiff's counsel asked Dr. Renton about his use of the Ventralight ST despite the lack of animal studies.  (ECF No. 571 at PageID #30811–12.)  In

explaining why he used the Ventralight ST despite the lack of animal studies, Dr. Renton testified that "[i]f we were having issues with this, I think it would appear in our literature. Surgeons would be talking to each other saying this is an issue[.]" (*Id.* at PageID #30812.) Plaintiff also points to when Plaintiff's counsel asked Dr. Renton why, if resorption hypothetically occurs too quickly and bare polypropylene is left, there wouldn't be a disaster when it presses against the bowel. (*Id.* at PageID #30851.) Dr. Renton agreed that this could present serious problems, but claimed that wasn't happening or he would be seeing a robust number of fistula and bowel obstruction surgeries in his practice. (*Id.*)

In response, Defendants point to the Court's statement at trial that if a party believes a door has been opened and the Court should revisit one of its MIL rulings, the parties should not assume the door has been opened and must ask the Court first. (ECF No. 566 at PageID #29761.) Despite this, Defendants claim, Plaintiff did not argue that "[defense] counsel's reference to medical literature or Dr. Renton's testimony about the lack of observed complications opened the door to anything, including pending lawsuits." (ECF No. 584 at PageID #33126.) Regarding defense counsel's opening statement, Defendants argue that "[n]o implications regarding pending lawsuits were raised or averted to; the cited statements focused solely on the medical community and the medical literature and what it had to say (or not say) about [Defendants'] products." (*Id.* at PageID #33126–27.) Defendants argue the same in reference to Dr. Renton's testimony.

In his reply, Plaintiff points to his argument during trial that Defendants had opened the door to the other pending cases. (ECF No. 587 at PageID #33153.) At trial, the Court clarified that the door had not been opened and information regarding the number of lawsuits was "not on the table." (ECF No. 570 at PageID #30591–92.) The Court stands by this conclusion. The statements Plaintiff points to do not relate to the number of pending lawsuits. As the Court told

11

the parties at trial, the door had not been opened to discuss the number of lawsuits. (*Id.* at PageID #30591–92.) "[T]he evidence of prior litigation is not relevant because 'it is not clear that any such prior conduct, particularly if it has not been proven to have occurred, would make any material fact at issue in this case any more or less likely to have occurred.' Thus, the fact that Defendants were parties to [other] litigation does not 'have any tendency to make a fact more or less probable' in this case." *Cannon v. Licking Cty., Ohio*, No. 2:17-CV-00004, 2019 WL 5543032, at *3 (S.D. Ohio Oct. 25, 2019) (citing *Watkins v. Genesee*, No. 13-13678, 2016 WL 727855, at *3 (E.D. Mich. Feb. 24, 2016), Fed. Rule Evid. 401). Additionally, as Defendants point out, the Court's MIL rulings did not "prohibit[] Plaintiff from introducing evidence of complaints about the [Ventralight ST] that pre-dated [Plaintiff's] implantation date—including lawsuits, MDRs, or AERs." (ECF No. 584 at PageID #33129.) Thus, Plaintiff was not without the ability to rebut any arguments by Defendants about a lack of complaints. Therefore, a new trial is not warranted on this ground.

Plaintiff argues that Defendants violated the Court's ruling through defense counsel's statement that "[if] the hydrogel resorbs too quickly on the Ventralight ST and all the ST product line then the medical community would know about it. It would be published in medical journals that surgeons read every day. It would be discussed and debated at surgeon conferences. But that has not occurred. In fact, just the opposite." (ECF No. 558 at PageID #28427.) The Court's analysis regarding defense counsel's statements in Part III.A, *supra*, also applies here. Defense counsel's statements were not so outrageous as to warrant a new trial.

### D. Testimony About Recommendations of Mesh Products

Plaintiff filed a MIL to exclude all evidence related to Defendants' employees, witnesses, expert witnesses, and/or their family members' personal experience with mesh. The Court granted

12

in part and denied in part the motion, ruling in MIL Order No. 3 that Defendants could introduce limited evidence regarding the Vice President of Regulatory Affairs Stephanie Baker's implantation with the hernia mesh device at issue in that case. (MIL Order No. 3, ECF No. 332 at PageID #17889.) At the September 10, 2021 MIL hearing, the Court concluded:

> [D]ecision makers who expose themselves to the same risks would be some evidence of the company's intent, whether it knew something was dangerous . . . [Ms. Baker] obviously can be cross-examined, but she had the surgery, used the same device, and she was directly involved in the process to bring the product to market. So, to be clear, and I think everyone understands this, she is not a witness to testify that the product was safe and no inference is to be drawn that [if] it worked for her, it's got to work for everybody. We know that's not proper. But *it does go to knowledge and notice of Bard*.

(ECF No. 345 at PageID #18608 (emphasis added).)

Plaintiff here argues that Defendants "improperly elicited irrelevant, highly prejudicial, and undisclosed opinion testimony about two of their fact witnesses, Dr. John DeFord and Roger Darois, recommending Defendants' hernia mesh products, which was used as evidence of the Ventralight ST's safety, running afoul of yet another MIL order issued by this Court." (ECF No. 573 at PageID #31191.)

At trial, Dr. DeFord testified that in 2012, he represented the ST technology to his brother who had a ventral hernia repair. (ECF No. 576 at PageID #31748–49.) Mr. Darois testified that he recommended the Ventralex ST, which had the same ST technology as the Ventralight ST, to one of his friends who was having an umbilical hernia repair. (ECF No. 577 at PageID #32035–36.) Plaintiff argues that this testimony unfairly prejudiced him, and that Defendants did not disclose the mesh recommendation testimony during discovery. Because the testimony was not disclosed, Plaintiff argues, there was no opportunity to further investigate the witnesses' recommendations, "including whether the individuals receiving the recommendation where actually implanted with Defendants' mesh or whether those individuals experienced any problems

13

or complications with the implantation." (ECF No. 573 at PageID #31193.)  Plaintiff also points to Defendants' closing argument, in which counsel stated "Dr. DeFord testified, he recommended the ST technology to his brother in 2012.  If he really *knew or thought there was an issue with it*, no one would do that. . . . And the same situation with [Mr. Darois], recommended Ventralex ST to a good friend.  These are two people who knew of the technology." (ECF No. 579 at PageID #32555 (emphasis added).)

Mr. Darois, the former vice-president of research and advanced technology, testified that he recommended the ST technology to a good friend, saying that information about hernia recurrence rates in a study "reconfirmed everything [he] already knew, gave [him] even more confidence in the product." (ECF No. 577 at PageID #32035–36.)  Mr. Darois spoke specifically to his knowledge of the product and state of mind, which was a permissible use of recommendation testimony pursuant to the Court's ruling on Plaintiff's MIL No. 4.

Defense counsel's closing arguments spoke specifically to the individuals' knowledge and notice as it relates to their recommendations.  (ECF No. 579 at PageID #32554–55.)  This fits within the narrow purpose for which the Court allowed such testimony.  Testimony regarding a decision maker's personal use or recommendation of Defendants' polypropylene and/or ePTFE hernia mesh was admissible to show Defendants' state of mind, which is what Defendants presented.  Therefore, a new trial is not warranted on this ground.

Plaintiff also claims that he was prejudiced because he had no opportunity to further investigate the witnesses' recommendations, "including whether the individuals receiving the recommendation were actually implanted with Defendants' mesh or whether those individuals experienced any problems or complications with the implantation." (ECF No. 573 at PageID #31193.)  However, whether the person experienced any complications with the mesh bears no

relation to Dr. DeFord's or Mr. Darois's knowledge when recommending the product. Recommendations of the product were only admissible to show "evidence of the company's intent, whether it knew that something was dangerous." (ECF No. 345 at PageID #18608.) Therefore, Plaintiff's inability to investigate the surgical outcomes caused him no prejudice.

## IV. Conclusion

Accordingly, Plaintiff's motion for a new trial (ECF No. 573) is **DENIED**.

**IT IS SO ORDERED.**


**12/21/2021**             s/Edmund A. Sargus, Jr.
**DATE**                   **EDMUND A. SARGUS, JR.**
                           **UNITED STATES DISTRICT JUDGE**